UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TREY COCKRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-cv-01260-JAR |
| | ) |
| JOSHUA BOWERSOX, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court upon Defendants Jon Belmar, the former Police Chief of the St. Louis County Police Department, and St. Louis County (collectively the "County Defendants") motion to dismiss Plaintiff's First Amended Complaint. (Amended Compl., Doc. No. 39). In the alternative, the County Defendants ask the Court to strike Plaintiff's complaint. Plaintiff, a black man, was arrested on November 20, 2018, and claims the officers used excessive force in effecting the arrest. Plaintiff raises one claim for a violation of his Fourth Amendment right to be free from excessive force (Count I) against Belmar, in both his individual and official capacities, and St. Louis County and one claim for failure to train and discipline against St. Louis County. (Count II).[1] The motion is fully briefed and ready for disposition.

---

[1] Plaintiff also alleges claims against Officers Joshua Bowersox, Jeffrey Dulaney, and Wiggs, as well as Joseph L. Speiss, the Chief of Police for the Brentwood Police Department, Brentwood Mayor Chris Thorton, Richmond Heights Mayor Jim Thompson, the City of Brentwood, and the City of Richmond Heights.

1

I.     **Background**

The Court accepts the factual allegations as true for the purposes of ruling on a motion to dismiss. On the night of November 20, 2018, Officer Bowersox and Officer Stanze, Brentwood Police Department ("BPD") officers, initiated a traffic stop of a vehicle driven by Sharron Jackson. Plaintiff was a passenger in the vehicle. Plaintiff exited the vehicle and began running into Deer Creek. Officer Bowersox pursued Plaintiff, and shortly after he informed dispatch that there were "shots fired," although Plaintiff never discharged his weapon. Officers Wiggs and Dulaney—employees of the Richmond Heights Police Department ("RHPD")—responded to the transmission and approached Deer Creek. Officers Bowersox, Dulaney, and Wiggs (collectively, the "Arresting Officers") pursued Plaintiff and discharged their firearms at him. Plaintiff sustained multiple gunshot wounds. He was then handcuffed and placed under arrest. Plaintiff was unarmed at the time he was shot, although a firearm was discovered in the creek, 424 feet away from where Plaintiff was shot.

Although none of the officers involved in the shooting and arrest are employees of the St. Louis County Police Department, Plaintiff raises claims against St. Louis County and Belmar. Plaintiff contends that the County Defendants are liable for his injuries because St. Louis County and the St. Louis County Police Department set standards for the use of force and de-escalation for all police departments in the County. Plaintiff claims the County can exercise this power in two ways. First, Plaintiff alleges the County may enact standards that apply to all municipal police departments within the County, including RHPD and BPD, through Article VI § 18 of the Missouri Constitution. Second, Plaintiff claims that the County operates the Saint Louis County and Municipal Police Academy (the "Academy"), which trains officers employed by BPD and

2

RHPD. Amended Compl. at ¶ 37. Plaintiff alleges that the Academy trains police officers in "killology," which encourages officers to use more force than is necessary. Id. at ¶ 39. Plaintiff further claims the County and the Academy do not have a de-escalation policy in their policing orders and have not drafted guidelines emphasizing de-escalation and limiting the use of lethal force. Id. at ¶¶ 45-46.

Plaintiff contends the County Defendants were on notice of the need for de-escalation policies and training due to a number of instances of excessive use of force by police officers, including one incident involving a BPD officer who broke a woman's wrist while detaining her for a search. Id. at ¶¶ 51-57. None of the incidents described in the Complaint involve the officers who arrested Plaintiff, nor do any involve an RHPD officer. Id. Plaintiff also claims the County Defendants were on notice of deficiencies in their training protocols through the Collaborative Reform Initiative, an assessment of the St. Louis County Police Department produced in collaboration with the DOJ's Office of Community Oriented Policing Services. The Collaborative Reform Initiative urged the County and the municipalities within the County to "enhance basic academy and supervisor in service training…including de-escalation training," and urged the SLCPD to "reduce use of force and injuries to both officers and citizens." Id. at ¶ 42. The Collaborative Reform Initiative further noted the Academy provided insufficient training hours devoted to community engagement and community policing. Id. at ¶ 60.

The County Defendants argue that Plaintiff has failed to state a claim against one or both of them for four reasons: 1) the County had no control over the officers involved in Plaintiff's arrest; 2) Plaintiff has failed to state a cause of action pursuant to § 1983; 3) the County is

protected by sovereign immunity; and 4) Belmar is entitled to qualified immunity. Should the Court deny the motion to dismiss, the County Defendants ask the Court to strike the Complaint.

## II. Legal standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing the litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A plaintiff need not provide specific facts in support of his allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562 (internal citation omitted). This standard "simply calls for enough facts to raise reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556. The plausibility of the plaintiff's claim is reviewed "as a whole, not plausibility of each individual allegation." Zoltek

Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal quotation marks and citation omitted).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555-56. The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 556 U.S. at 678-79. Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. at 679.

### III.     Control over the incident

The County Defendants' first and second arguments are essentially the same, so the Court will address them together. The County Defendants contend that they had no control over the officers involved in Plaintiff's arrest, as those officers were not County employees and were not subject to County oversight, so the Court will address them together. Plaintiff claims the County Defendants failed to adequately train the RHPD and BPH officers involved in his arrest, resulting in the use of excessive force.

The Eighth Circuit recognizes the following elements for liability under § 1983 for failure to train or supervise: (1) notice of a pattern of unconstitutional acts committed by subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; and (4) proximate cause of the plaintiff's injury. Livers v. Schneck, 700 F.3d 340, 355 (8th Cir. 2012). "In order to show deliberate indifference or tacit authorization, [the plaintiff] must allege and ultimately prove [the supervisory defendant] 'had

5

notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.'" Id. at 355–56 (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir.1996)).

The County Defendants focus on the first element and explain that the Arresting Officers are not employees of the County, and as such are not their subordinates. Plaintiff responds that, although the Arresting Officers are not County employees, they are nevertheless subordinates of the County. "Ordinarily, a government entity cannot be held responsible for unconstitutional conduct by actors not under its control." McKay v. City of St. Louis, Missouri, No. 4:15-CV-01315-JAR, 2019 WL 1436972, at *11 (E.D. Mo. Mar. 31, 2019), aff'd sub nom. McKay v. City of St. Louis, 960 F.3d 1094 (8th Cir. 2020). However, "a city can be held liable for conduct by employees of a separate government entity when the two are acting in concert to deprive persons of their constitutional rights." Id. Here, Plaintiff contends that St. Louis County and Belmar acted in concert with the BPD and RHPD to deprive him of his rights, as the entities work in concert to train their officers. To succeed on this theory, Plaintiff must link the actions which violated his constitutional rights to a County custom or policy. Appel v. City of St. Louis, No. 4:05-CV-772 SNL, 2007 WL 9808053, at *16 (E.D. Mo. Aug. 15, 2007).

Plaintiff ties his failure to train claim to two County customs or policies. First, Plaintiff argues the County Defendants could have, but did not, establish municipal use of force policies applicable to RHPD and BPD officers use of force. Second, Plaintiff argues the County Defendants failed to properly train RHPD and BPD officers on de-escalation and use of force through the Academy.

**County Police Powers**

Plaintiff first claims the County has the power to enact policing policies that apply to RHPD and BPD, and as such the officers involved in Plaintiff's arrests are the County Defendants' subordinates. The County Defendants respond that they cannot regulate municipal police departments within the County. The County attempted to set standards governing municipal police departments through Ordinance 26,254 (the "Ordinance"), but the Missouri Court of Appeals determined the County lacked the authority to pass the Ordinance. City of Olivette v St. Louis County, Mo., 507 S.W. 3d 647, 646 (Mo. Ct. App. 2017). In Olivette the County argued the Ordinance was enacted pursuant to Art. VI, § 18(b) of the Missouri Constitution and Rev. Stat. Mo. § 192.300. The court concluded that the Ordinance was not a valid exercise of the County's authority under those provision. Id.

Plaintiff argues that the County nevertheless has the power to set policing standards applicable to incorporated cities within its boundaries through Art. VI § 18(c) or through the County's police powers.[2] The Court need not determine whether the County has the authority to set policing standards that apply to the RHPD and BPD, as it is undisputed that the County is not exercising that authority. "Municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 106 S.Ct. 1292, 1298 (1986). "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." City of Oklahoma City v. Tuttle, 105 S.Ct., 2427, 2436 (1985). That is, the

---

2  The Court notes that the County's police powers and its powers pursuant to Art. VI § 18(c) are one and the same; the police power delegated to St. Louis County was delegated via § 18(c). See Missouri Bankers Ass'n, Inc. v. St. Louis Cty., 448 S.W.3d 267, 273 (Mo. 2014); Casper v. Hetlage, 359 S.W.2d 781, 789 (Mo. 1962).

7

entity's official "policy or custom" must have "caused" the constitutional violation alleged. Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir.1987). The County does not set standards for the RHPD and BPD and it is not "actually responsible" for the standards applied by those departments.

**The Academy**

Plaintiff argues he has stated a claim against the County Defendants for failing to train the Arresting Officers because the Academy's training on de-escalation and use of force was inadequate. The County Defendants did not specifically respond to Plaintiff's argument that they may be liable for failing to adequately train officers at the Academy. But, the Court concludes Plaintiff has failed to state a claim against the County for failing to train the officers at the Academy, as Plaintiff has not alleged facts which would show the County Defendants were the proximate cause of his injuries.

To state a claim for failure to train under § 1983, Plaintiff must allege the failure was the proximate cause of his injuries. Livers, 700 F.3d at 355. A plaintiff's failure to include any allegations, reference or language from which one could begin to draw an inference that the conduct complained of resulted from an unconstitutional policy or custom renders the complaint deficient. Crumpley–Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004). Plaintiff alleges in the Amended Complaint that the Academy is operated by the SLCPD and trains both BPD and RHPD officers. Amended Compl. at ¶ 37. Plaintiff further claims the Academy does not adequately train officers on de-escalation or the appropriate use of force. Id. at ¶¶ 39, 45. The Amended Complaint has many conclusory statements, but no specific facts to support those statements. The Department of Justice Assessment referenced does not provide a factual basis for the conclusions the Complaint seems to suggest—namely, that the training

received by police officers in the County causes them to quickly resort to the use of deadly force. Notably missing are any facts about the training the Arresting Officers did or did not receive. Without any factual basis for the allegations, Plaintiff has failed to sufficiently plead a failure to train claim. Ball-Bey v. Chandler, 415 F. Supp. 3d 884, 900 (E.D. Mo. 2019).

Accordingly,

**IT IS HEREBY ORDERED** that the County Defendants' Motion to Dismiss is **GRANTED**.

Dated this 28th day of April, 2022.

                                                **JOHN A. ROSS**
                                                **UNITED STATES DISTRICT JUDGE**