**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TREY COCKRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-cv-01260-JAR |
| | ) | |
| JOSHUA BOWERSOX, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on two motions for summary judgment. On October 2, 2023, Defendants the City of Brentwood, Police Chief Joseph L. Speiss, and Officer Joshua Bowersox filed their Motion for summary judgment. ECF No. 70. Defendants the City of Richmond Heights, Mayor Jim Thomson, and Officer Jeffrey Dulaney also filed their Motion for summary judgment on October 2. ECF No. 73. On October 30, 2023, Plaintiff filed a combined Response to both motions. ECF No. 77.[1] On November 13, 2023, Defendants filed their Replies. ECF Nos. 79 and 82. This matter is now fully briefed and ready for disposition. For the reasons explained below, the Court will grant Defendants' Motions.

---

[1] Plaintiff filed a Response on October 30, 2023, (ECF No. 76) and later that day filed a "Corrected" Response with some minor differences. The filings are substantially similar. The Court will refer to Plaintiff's later-filed Response as his Response throughout the remainder of this Order.

**Background**

A.     The Complaint

Plaintiff filed his original Complaint with this Court on October 20, 2021.  ECF No. 1.

The Complaint alleged three counts of constitutional rights violations under 42 U.S.C. § 1983

against twenty-one Defendants.

On January 28, 2022, Plaintiff filed an Amended Complaint, which raises three claims

under 42 U.S.C. § 1983: (1) Count I, use of excessive force in violation of the Fourth

Amendment against Defendants Bowersox and Dulaney[2]; (2) Count II, failure to train and

discipline under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against the City of

Brentwood; Joseph Speiss, Chief of Police for the Brentwood Police Department; the City of

Richmond Heights; and Jim Thomson, Mayor of Richmond Heights[3] (the "Municipal

Defendants"); and (3) Count III, Assault and Battery against Defendants Bowersox and

Dulaney.[4]  ECF No. 37.

B.     Relevant Facts

Generally, on a motion for summary judgment, the Court must view the evidence in the

light most favorable to the nonmoving party.  *See Emerald Pointe, LLC v. Taney Cnty.*, 78 F.4th

428, 432 (8th Cir. 2023).  But here, Plaintiff failed to respond to the Defendants' Statements of

Uncontroverted Material Facts ("SUMF") as required by Local Rule 4.01(E):

---

[2]     Plaintiff also named an Officer Wiggs as a Defendant to Count I, but all claims against
Defendant Wiggs were subsequently dismissed.  ECF No. 53.

[3]     Plaintiff also named St. Louis County as a Defendant to Count II, but all claims against
St. Louis County were subsequently dismissed.  ECF No. 47.

[4]     Plaintiff also named Officer Wiggs and former Police Chief Jon Belmar as Defendants to
Count III, but all claims against these two Defendants were subsequently dismissed.  ECF Nos.
47 and 53.

> Every memorandum in opposition [to a motion for summary judgment] must be accompanied by a document titled Response to Statement of Material Facts, which must be separately filed using the filing event "Response to Statement of Material Facts." The Response must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts.

The penalty for failing to follow the rule is clear: "All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." *Id.*

Plaintiff's opposition references his own SUMF, but Plaintiff did not file a separate response to Defendants' SUMF, nor did he seek leave to do so after Defendants' Replies pointed out his omission. Thus, all matters set forth in Defendants' SUMF are deemed admitted for purposes of summary judgment. *Id.*; *see also Whitt v. City of St. Louis*, No. 4:18-cv-1294, 2021 WL 2805286, at *2 (E.D. Mo. July 6, 2021) (collecting cases). Accordingly, the following facts are taken largely from the Defendants' SUMFs (ECF Nos. 72 and 75) and are deemed admitted.

1.    Defendants the City of Brentwood, Police Chief Spiess, and Officer Bowersox

On November 20, 2018, at around 11:30 p.m., Plaintiff Cockrell was the front seat passenger in a vehicle parked in the Drury Inn parking lot in Brentwood, Missouri. City of Brentwood police officers Nicholas Stanze and Defendant Joshua Bowersox made an investigatory stop of the vehicle after discovering the vehicle had warrants attached. At the time of the stop, Officer Bowersox was not aware that Plaintiff concealed a 9-millimeter handgun in his pants. Officers Stanze and Bowersox attempted to obtain pedigree information from the driver and Plaintiff and then returned to their police cruiser to run the information through their computer.

While the officers were checking the information, Plaintiff exited the car and ran.  Officer Bowersox ran after Plaintiff towards Eager Road while Officer Stanze remained with the driver in the Drury Inn parking lot.  Officer Bowersox lost sight of Plaintiff as Plaintiff turned out of the lighted area heading east on Eager Road into an area that crosses over Black Creek.  Officer Bowersox then heard a gunshot that he believed came from an area of brush along the east side of the creek where he believed Plaintiff was located.  Officer Bowersox did not see Plaintiff fire the gun, but upon hearing a gunshot, he believed that Plaintiff had fired at him.

Officer Bowersox ran back to the west side of the creek toward the Drury Inn parking lot. He called out "shots fired!"  Officer Stanze, who was still in the Drury Inn parking lot, called out on the police radio "shots fired!"  At around the time Officer Stanze made his radio call, Plaintiff abandoned his weapon on a ledge at the edge of the creek.  Plaintiff then descended into the area around Black Creek.  Plaintiff then ran southbound along and within Black Creek.

Officer Bowersox walked along the west side of the creek trying to find Plaintiff.  Officer Bowersox was not aware that Plaintiff had abandoned his gun.  Officer Bowersox then heard someone yelling "get down!" to the south.  He ran southward down a service road behind the Drury Inn.  There, Officer Bowersox saw Plaintiff in a raised area in the middle of the creek surrounded by weeds and foliage.  Officer Bowersox then heard what he believed to be another responding officer on the opposite side of the creek yelling "drop the gun!"  Officer Bowersox and other responding officers then shouted instructions to Plaintiff to get on the ground and to drop the gun.  Plaintiff did not comply with these instructions.  Plaintiff then looked at Officer Bowersox and extended his arm.  Officer Bowersox believed Plaintiff was pointing an object at him.  Officer Bowersox believed the object was a gun.  He did not immediately open fire but backpedaled to try to gain cover.  While retreating, he tripped over a curb and fell backwards.

4

Officer Bowersox stood up after his fall and saw Plaintiff still pointing an object at him.  Officer Bowersox then heard gunshots and saw Plaintiff turn around to point the object towards the other side of the creek where Officer Bowersox believed at least one other responding officer was positioned.  Officer Bowersox then opened fire on Plaintiff believing that Plaintiff was shooting at other officers.  Officer Bowersox does not know how many, if any, shots he fired at Plaintiff actually struck Plaintiff.

After Plaintiff was shot and subdued, other officers entered Black Creek to arrest him. Officer Bowersox remained outside of the creek to provide cover for the other responding officers as they apprehended Plaintiff.  Plaintiff was taken to Barnes Jewish Hospital for treatment for multiple gunshot wounds.

Discovery has not produced evidence related to the training, supervision, or prior bad acts of the City of Brentwood Police Department and Officer Bowersox.  Plaintiff has not presented evidence of a pattern of use of excessive force attributable to the City of Brentwood Police Department or Officer Bowersox.  Additionally, Plaintiff has cited to no evidence of deliberate indifference in the training and supervision with the City of Brentwood Police Department, including Officer Bowersox.

> 2.    Defendants the City of Richmond Heights, Officer Dulaney, and Mayor Jim Thomson

On November 20, 2018 at around 11:30 p.m., Officer Dulaney was at a nearby gas station when he heard a dispatch report that Officers Bowersox and Stanze had stopped a vehicle at the Drury Inn that had warrants attached.  Officer Dulaney drove towards the Drury Inn to assist. On the way, Officer Dulaney heard a "shots fired!" radio message in connection with the stop. Upon hearing this radio message, Officer Dulaney believed that Plaintiff was firing at Officers Bowersox and Stanze.  Officer Dulaney activated his emergency lights and sirens to quickly

5

arrive at the Drury Inn.  He drove his vehicle to the east bank of Black Creek just southeast of the Drury Inn.  Officer Dulaney retrieved his department approved firearm and proceeded towards the creek where he believed Plaintiff was located.  He proceeded along the creek until he saw Plaintiff standing in the middle of the creek with his arm in the air pointed toward other responding officers.  Officer Dulaney saw Plaintiff holding something in his extended hand, which he believed to be a firearm.  Officer Dulaney then heard an officer shout "drop the gun!", and he too commanded that Plaintiff drop his weapon.  Plaintiff did not lower his hands or drop the item within his hand.  Officer Dulaney then heard two gunshots and believed that one came from Plaintiff.  Officer Dulaney fired his department approved firearm toward Plaintiff.  Officer Dulaney believed Plaintiff was an active risk to others.  After Officer Dulaney fired, Plaintiff fell to the ground but later stood up again.  Believing that Plaintiff had been shot, Officer Dulaney believed that Plaintiff may have been wearing hard body armor.  Officer Dulaney again aimed his weapon towards Plaintiff's waist area and fired.  Officer Dulaney stopped firing his weapon once he believed that Plaintiff was no longer a threat to himself or the lives of the other responding officers.  Plaintiff was arrested and charged and eventually pled guilty to unlawful possession of a firearm and resisting arrest in relation to the November 20, 2018 incident.

Plaintiff has presented no evidence of a pattern of use of excessive force attributable to the City of Richmond Heights or Officer Dulaney.  There is no evidence of a custom of deliberate indifference in the training and supervision within the City of Richmond Heights Police Department or specifically in relation to Officer Dulaney.

C.      The Motions for Summary Judgment

Defendants Officer Bowersox, Police Chief Speiss, and the City of Brentwood move for summary judgment in their favor as to all claims.  ECF Nos. 70 and 71.  Officer Bowersox

argues that he has qualified immunity from the claims in Plaintiff's Count I and official immunity from the state law tort claims of assault and battery in Plaintiff's Count III.  Defendant Bowersox further argues that there is no evidence that he exerted excessive force on Plaintiff because there is no evidence that Officer Bowersox shot Plaintiff.  Defendant Bowersox primarily relies on the outcome in *Thompson v. Hubbard* to support his contention that he has qualified immunity even though he never definitively saw Plaintiff possess a weapon.  On this basis, Defendant Bowersox contends he is due summary judgment in his favor on Count I and Count III.

Defendants the City of Brentwood and Police Chief Speiss argue that Plaintiff's Count II against each of them fails because there is no underlying constitutional violation committed by Officer Bowersox.  Additionally, these Defendants argue that there is no evidence of any unconstitutional policy, custom, or deliberate indifference as the driving force behind Plaintiff's claimed injuries.

Defendants Dulaney, Thomson, and the City of Richmond Heights make similar arguments to those advanced by the Brentwood Defendants.  ECF Nos. 73 and 74.  Officer Dulaney argues that he acted reasonably under the circumstances and is entitled to qualified immunity on Counts I and official immunity on Count III.  Officer Dulaney also argues that Plaintiff has failed to produce any evidence that the shots he fired actually hit Plaintiff, and therefore he is entitled the summary judgment on both claims against him.

Defendants the City of Richmond Heights and Mayor Thomson argue that they are entitled to summary judgment on Count II because Plaintiff has failed to establish that there was a policy, custom, or improper training that led to a deprivation of Plaintiff's constitutional rights. Defendant Thomson further asserts that he is entitled to legislative immunity.  Defendant Mayor

Thomson also argues that he is entitled to summary judgment under the doctrine of official immunity.

Plaintiff argues in his Response that Defendants are not entitled to summary judgment as to any of Plaintiff's claims.  ECF No. 77.  Plaintiff's Response cites to evidence not in the record regarding a "ballistic investigation," which he says concluded that there was no evidence that Plaintiff's gun had been fired.  He asserts that because Officer Bowersox has not presented definitive evidence that Plaintiff shot at officers, Officer Bowersox and the other Defendants may still be liable because a reasonable jury could conclude that Officer Bowersox's actions were unreasonable under the circumstances.  Plaintiff asserts that Officer Bowersox has also failed to present evidence that he believed that he was being shot at by Plaintiff.  He further argues that Officer Dulaney did not observe Plaintiff move towards him with a gun and did not believe his life was in danger such that Officer Dulaney acted in an objectively unreasonable manner and official immunity does not apply.  Plaintiff relies on *Lee v. City of San Diego*, 492 F. Supp. 3d 1088, 1095 (S.D. Cal. 2020), for the contention that a reasonable jury could conclude that Defendants Bowersox and Dulaney used force that was not objectively reasonable under the circumstances. Plaintiff provides no explanation as to how this case is similar to the facts in *Lee*, which involved an officer twisting the plaintiff's arm during an arrest and caused several fractures in plaintiff's arm.  *Id.*

Plaintiff makes no response to the Municipal Defendants' arguments that they are entitled to summary judgment, which Defendants each note in their Replies.  Defendants Replies largely restate their arguments as to why Defendants Bowersox and Dulaney are entitled to summary judgment and assert that Plaintiff's Response cites to no evidence indicating a dispute of any material fact.  Defendants also argue in their Replies that Plaintiff did not respond to Defendant's

SUMFs, and therefore the facts stated in their SUMFs are deemed admitted for the purposes of summary judgment.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party, and [the Court] review[s] the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation omitted).  To avoid summary judgment, the nonmovant has the "burden of presenting evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in their favor." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (citation omitted).  The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

## Discussion

The Court has thoroughly reviewed the pleadings, evidence, and supporting case law presented by the Parties and finds that Defendants are entitled to summary judgment on all claims.  No disputed issues of material fact remain, and Defendants are due summary judgment

as a matter of law.  Plaintiff has not cited to any evidence to support his theories of liability against the Defendants.  The Court will address each of these theories in turn.

    A.    Count I - Use of Excessive Force in Violation of the Fourth Amendment Against Officers Bowersox and Dulaney

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  *Burbridge v. City of St. Louis*, 2 F.4th 774, 780 (8th Cir. 2021) (internal quotation marks and citation omitted).  "Once a defense of qualified immunity is raised, a plaintiff must offer 'particularized' allegations of unconstitutional or illegal conduct."  *Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997) (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)).  The Supreme Court has emphasized that "qualified immunity represents the norm," *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), and its protections extend to "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When analyzing qualified immunity claims, courts consider two crucial factors: (1) whether the alleged facts demonstrate that the public official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged misconduct.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Mitchell v. Shearrer,* 729 F.3d 1070, 1076 (8th Cir. 2013) (quoting *Anderson*, 483 U.S. at 640).  There is no requirement that "the very action in question has previously been held unlawful," but for an official action to violate a clearly established right, the unlawfulness of that action must be apparent in light of pre-existing law.  *Anderson*, 483 U.S. at 640.  "In other words, the right violated must have been established 'beyond debate.'"

10

*Mendoza v. U.S. Immigration & Customs Enf't*, 849 F.3d 408, 417 (8th Cir. 2017) (citations omitted). Clearly established law "should not be defined at a high level of generality," but instead "must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and citations omitted). "The plaintiff bears the burden of proving that the law was clearly established." *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013) (citation omitted). If a defendant raises a qualified immunity defense in a summary judgment motion, "the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right." *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013).

In a Fourth Amendment excessive force case, the Court's role is to assess, "from the perspective of a reasonable officer on the scene, whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Franklin ex rel. Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation marks omitted). "The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012)). However, deadly force is not justified where a person "poses no immediate threat to the officer and no threat to others." *Franklin*, 878 F.3d at 635 (citations omitted). As held by the Eighth Circuit, "[a]n officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun." *Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001) (citation omitted).

The Court finds that Officers Bowersox and Dulaney are immune from liability under the principles of qualified immunity.  Plaintiff's sole argument against the application of qualified immunity is that Defendants have failed to definitively establish that Plaintiff fired a gun at Officers Bowersox or Dulaney.  Under Plaintiff's logic, Defendants Bowersox and Dulaney would only be entitled to qualified immunity if they were able to establish that they saw Plaintiff shoot a gun in their direction.  But whether Officers Bowersox or Dulaney definitively established that Plaintiff had a weapon or fired a weapon in their direction before they fired upon him is not a material issue to determine whether these officers are entitled to qualified immunity. The issue is whether these Defendants acted reasonably under the circumstances.

The uncontroverted facts establish that both Officer Bowersox and Officer Dulaney acted reasonably under the circumstances.  They both had probable cause to believe that Plaintiff had a gun and was firing it at them or their fellow officers when they shot at Plaintiff.  There is no dispute that Officer Bowersox heard a gunshot while chasing Plaintiff.  There is no dispute that Officer Dulaney heard a radio call that shots had been fired before he arrived on the scene.  It is also undisputed that Plaintiff appeared to not respond to the officers demands that he drop what he was holding and get on the ground to surrender after the officers confronted him in Black Creek.  The facts show that instead of heeding these commands, Plaintiff pointed an object at the officers.  In these circumstances, Defendants' use of force, even deadly force, against a fleeing suspect whom they believed was a threat to themselves, their fellow officers, and the public was reasonable.  Because Officers Bowersox and Dulaney acted reasonably, there is no underlying constitutional violation, and they are entitled to qualified immunity.  Because Plaintiff has failed to establish any issue of material fact as to his Fourth Amendment Excessive Force Claim, Officers Bowersox and Dulaney are entitled to judgment as a matter of law on Count I.

12

B.     Count II - *Monell* Liability Against the Municipal Defendants

In *Monell v. Dep't of Soc. Servs.*, the United States Supreme Court held that local governing bodies, like Defendants the City of Brentwood and the City of Richmond Heights, "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690–91 (1978).  Additionally, local governments may be liable for constitutional violations "pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 691.  Importantly, a municipality cannot be held liable under § 1983 simply because it employs a tortfeasor. *Id.* Under certain circumstances, liability can lie for constitutional violations under § 1983 on the basis that the municipality failed to train its employees. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).

For the purposes of *Monell* liability, a municipal "policy" "is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (citations omitted).  To establish the existence of a relevant municipal "custom," Plaintiff must establish:

(1)     The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2)     Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking official after notice to the officials of that misconduct; and

(3)     The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Id.* (cleaned up).

The Municipal Defendants are entitled to summary judgment on Plaintiff's *Monell* liability claims. The Municipal Defendants have indicated that there is no evidence or even allegations in the Amended Complaint that could establish their liability for an underlying constitutional violation related to the failure to train officers involved in the shooting. Plaintiff has failed to come forward with any evidence or argument as to why the Municipal Defendants should be held liable for allegedly failing to train its officers. Plaintiff has not even attempted to establish that there remain any disputes of material facts in relation his *Monell* liability claims. As such, the Municipal Defendants are entitled to judgment as a matter of law as to Count II.[5]

C. Count III - Common Law Assault and Battery Against Defendants Bowersox and Dulaney

Under Missouri law, assault and battery are two distinct causes of action. *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. 2011) (en banc) (citation omitted). Assault is "any unlawful offer to attempt to injure another with the apparent present ability to effectuate that attempt under circumstances creating a fear of imminent peril." *Id.* (citing *Phelps v. Bross*, 73 S.W.3d 651, 655 (Mo. Ct. App. 2002)). The required elements of a claim of assault in Missouri are: "(1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent; and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." *Id.* Battery is "the consummation of assault." *Id.* "Battery is defined as an intended, offensive bodily contact with another." *Phelps v. Bross*, 73 S.W.3d 651, 657 (Mo. Ct. App. 2022) (citation omitted).

---

[5]     Because the Court will grant summary judgment for Defendant Mayor Thomson based on Plaintiff's failure to establish a dispute of material fact as to Count II, the Court need not address Mayor Thomson's arguments regarding the application of official and legislative immunity.

Defendants Bowersox and Dulaney argue that they are entitled to summary judgment on Count III under the official immunity doctrine. In Missouri, "[t]he official immunity doctrine provides that public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002) (quoting *DaVee v. Mathis*, 812 S.W.2d 816, 827 (Mo. Ct. App. 1991)). Official immunity protects police officers from liability when they execute a warrant, draw or fire a weapon, or draw and point a weapon at a suspect as discretionary acts. *Id.* (citing *Bachmann v. Welby*, 860 S.W.2d 31, 33 (Mo. Ct. App. 1993) and *Miller v. Smith*, 921 S.W.2d 39, 46 (Mo. Ct. App. 1996)).

Defendants Bowersox and Dulaney have established that they are immune from liability as to Plaintiff's Count III under the official immunity doctrine. Plaintiff makes no arguments and cites to no evidence indicating that official immunity should not apply to Defendants Bowersox and Dulaney. Defendants Bowersox and Dulaney's acts of drawing and firing their weapons are discretionary acts for which they are afforded official immunity. The Court also notes that Plaintiff has not cited to any evidence establishing that any of the bullets Officers Bowersox or Dulaney fired towards Plaintiff actually contacted Plaintiff, nor has Plaintiff established that he was in apprehension of immediate bodily harm. As such, the Court finds that there is no dispute of material fact regarding Count III, and Defendants Bowersox and Dulaney are entitled to judgment as a matter of law.

### Conclusion

Based on the foregoing analysis, Defendants are entitled to summary judgment on each of Plaintiff's claims.

Accordingly,

15

**IT IS HEREBY ORDERED** that that Defendants the City of Brentwood, Police Chief Spiess, and Officer Bowersox's Motion for Summary Judgment (ECF No. 70) and Defendants the City of Richmond Heights, Mayor Thomson, and Officer Dulaney's Motion for Summary Judgment (ECF No. 73) are **GRANTED**.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 31st day of January, 2024.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE